WISCONSIN & ARKANSAS LUMBER COMPANY v. THOMAS.

## Opinion delivered March 22, 1920.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—In an action for injury to a sawmill laborer who had his hand crushed against a lumber truck by another truck pushed by a fellow servant, the question whether plaintiff was guilty of contributory negligence was for the jury, under the evidence.

2. TRIAL—INSTRUCTIONS.—Instructions hypothetical in form *held* not erroneous as assuming facts in dispute.

3. APPEAL AND ERROR—HARMLESS ERROR.—Where the court told the jury that the servant was not entitled to recover if he was guilty of contributory negligence, the master was not prejudiced by the court's refusal to charge that if the servant was negligent his recovery should be proportionately reduced, as the jury must have found that he was guilty of no negligence.

4. DAMAGES—WHEN NOT EXCESSIVE.—Where plaintiff had his finger so mashed as to require amputation, the nail mashed on another finger, the fingers and hand sore at the trial, and plaintiff rendered unable to work for 6 months, a verdict for $1,250 was not exceesive.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*W. R. Donham* and *T. D. Wynne,* for appellant.

1. The court erred in refusing to direct a verdict for defendant. The testimony did not warrant the submission of the controversy to a jury, as there was no proof of negligence on the part of any employee of the company or the company itself, nor was the alleged negligence of Calvin Cash the proximate cause of the injury, but was the failure of plaintiff himself to avoid the injury after having an opportunity to do so and that he did exercise proper precaution and judgment for his own personal safety. 22 R. C. L., par. 26, p. 142; 70 S. W. 616.

2. The court erred in giving instruction No. 1 for plaintiff. It assumes that defendant's servants were negligent; that the company was negligent and there was no evidence as to negligence by defendant or its servants, and is inconsistent with other instructions of defendant. The question of "assumption of risk" is one

for the jury, and they should be left untrammelled by any opinion or suggestion of the court. 135 Ark. 330. Plaintiff's instructions Nos. 5, 7 and 8 were erroneous. 194 S. W. 873.

*H. B. Means* and *D. D. Glover,* for appellee.

1.   The case was properly submitted to a jury on the question of negligence, and the evidence shows that the proximate cause of the injury was the negligence of Cash, an employee of appellant.

2.   There is no error in the instructions, and the verdict is sustained by the evidence. Mental suffering in addition to physical suffering can be considered by a jury in estimating damages. 95 Ark. 226; 84 *Id.* 42; 98 *Id.* 418; 82 *Id.* 504; 96 *Id.* 32.

3.   The question of assumed risk was properly submitted to the jury. 101 Ark. 564; 88 *Id.* 548.

SMITH, J. Plaintiff had been employed by defendant for something more than a month, but on the morning of his injury he was taken from his regular work and put to helping one Calvin Cash haul lumber trucks, which the witnesses called buggies. The customary way of handling the buggies was for one employee to go in front and pull, and another employee to work behind and push, to put the buggy in motion, and then catch the tongue of another buggy and, by the momentum of the first buggy, start the second one, and in this way haul two buggies at a time. This was the manner in which the servants were directed to perform the work. At the time of his injury plaintiff was thus engaged in moving empty buggies through a runway or lane improvised for this purpose.

The loaded buggies were pulled into the planer shed by a mule, and then placed in position along the tramway or runway, to be used at the proper time when the lumber on the buggy would be put through the planer machines. The loaded buggies were placed on each side of this avenue or runway, the space being slightly wider than the width of the buggy. When a buggy was un-

loaded it was the duty of plaintiff and Cash to remove it from the planing mill by pushing or pulling the buggies out through this avenue or runway. The buggies were pulled by an iron tongue, which was placed in a socket, thereby enabling it to have considerable play. The testimony differs as to the length of this tongue, but witnesses for plaintiff stated that it was two to two and one-half feet in length, and that it had a hand-hold in the end.

At the time of his injury plaintiff was between two buggies, pulling one with his right hand and pushing the other with his left hand. Cash was pulling the front buggy, and ran it into one of the loaded buggies. This stopped the front buggy so abruptly that the rear buggy ran into the front buggy and jammed the plaintiff's right hand against the rear of the front buggy, inflicting the injury for which he sues.

There appears to be no substantial controversy about the facts. Cash admitted that he was looking out over the mill yard—"rubbering," as he expressed it— and, without noticing what he was doing, ran the empty buggy into the loaded one.

There was a verdict and judgment for plaintiff, from which comes this appeal.

It is first insisted that plaintiff was guilty of contributory negligence, in that if he had been exercising due care for his own safety he could have removed his hand before it was mashed. This may have been true; but we cannot say, as a matter of law, that it is true, and the question of fact was submitted to the jury under proper instructions.

The instructions were somewhat lengthy, as is usually the case in personal injury actions, and all the instructions asked by the defendant were given except instruction numbered 1, which would have directed a verdict in defendant's favor.

Error is assigned in giving plaintiff's instructions numbered 1, 5, 7 and 8; but no fundamental defect in any one of them is pointed out. Certain objections of a spe-

cific nature were made, but the real point is whether a case was made for submission to the jury. It does appear that the jury might have found that this was one of those unavoidable accidents for which no one is responsible; but we are unable to say, as a matter of law, that no other reasonable conclusion could be drawn from the testimony set out above.

It is true the testimony does show that there were rough places in the floor over which the buggies were pulled, and that both plaintiff and Cash knew these places would in some measure impede the buggies, and this knowledge imposed on them the duty of preventing one buggy from running into the other; but these rough places were not necessarily calculated to stop a buggy abruptly like running an empty buggy into a loaded one would do.

An objection made to all the instructions complained of is that they assume certain facts which were in dispute. But the objection is not well taken, as the instructions are hypothetical in form, and we think no one of them assumes as a fact any controverted point.

We think that the objection to other instructions, that the jury was allowed to enter the realm of speculation, is not well taken, as the instructions complained of required the jury to find from the evidence that defendant was guilty of the negligence alleged in the complaint.

Error is assigned in the court's refusal to modify an instruction on the question of the measure of damages, the insistence being that the jury should have been told to take into account the negligence of plaintiff, if he was negligent, and to reduce his recovery in the proportion in which his negligence contributed to his injury. No prejudicial error was committed in this respect, however, because in one of the instructions given by the court the jury was told to find for the defendant if they found that plaintiff's own negligence contributed to his injury. The jury having found that plaintiff was guilty of no negligence, the omission to tell the jury to

reduce the recovery proportionately to plaintiff's negligence could not have been prejudicial.

It is finally insisted that the damages were excessive, and that the court erred in submitting the questions of compensation for mental anguish and reduced earning capacity. The verdict was for $1,250. One finger was so badly mashed that amputation was necessary, and the nail was mashed off another finger, and a physician testified that a month or six weeks after the injury plaintiff's hand was still sore and required treatment which he gave. This physician testified that there was still a soreness in the fingers at the time of trial, and that whether they ankylosed would depend on the treatment. Plaintiff testified that his fingers were still sore at the end of eight months, and that he was unable to do any hard work for six months after his injury, and in gripping his hand only two fingers could be used. A certain disfigurement would always exist. We think this testimony made it not improper to submit the questions of mental anguish and permanency of injury to the jury, and it does not appear that the verdict is so excessive as that we can say it is unsupported by the testimony.

No error appearing, the judgment is affirmed.